## OUELLETTE *v.* OUELLETTE

[No. 345, September Term, 1966.]

*Decided May 5, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Stanley M. Dietz* for appellant.

*Charles W. Bell,* with whom were *John T. Bell* and *Bell & Bell* on the brief for appellee.

HORNEY, J., delivered the opinion of the Court.

In this divorce action, in which the husband (Raymond S. Ouellette) filed a bill on the ground of adultery and the wife (Blanche T. Ouellette) filed a cross-bill on the ground of voluntary separation, the chancellor granted the husband an absolute divorce and awarded custody of the children to the father, and the wife appealed.

The questions on appeal are: (i) whether the court erred in granting the husband a divorce for adultery; (ii) whether the court erred in denying the wife a divorce for voluntary separation; and (iii) whether the court erred in granting custody of the two daughters to the father on the assumption that the mother had committed adultery.

Shortly after the wife was injured in an automobile accident in which the wife of the paramour (Cornelius W. Alexander) was killed, he began paying undue attention to the wife of the appellee. Subsequently, when marital troubles arose between the parties and the husband became suspicious, he discovered his wife and the paramour in an automobile and saw them kissing each other. When he attempted to persuade his wife to get out of the automobile, a fight ensued between the two men. Thereafter the parties, conforming to the financial arrangements they had made between themselves, entered into a separation agreement and the wife, taking the two daughters with her, left the marital home and took up residence in an apartment of her own. Later, the husband, claiming that he had been coerced into making it, attempted to repudiate the agreement.

Both before and after the execution of the separation agreement, the husband and a private detective he had hired, acting separately and on different occasions, had on several in-

stances seen the wife and paramour engaged in actions evincing an adulterous disposition at times when they had the opportunity to commit adultery.

At the trial, in addition to the production of detailed evidence, of which the above is a summary, the paramour, besides testifying as to having spent considerable time with the wife and as to having hugged and kissed her on numerous occasions, admitted having often been alone in the apartment with her and as to going on out-of-town trips with her, but denied planning to marry her or having sexual intercourse with her.

Aside from vigorously contesting the grant of the divorce and the award of the children to the appellee, the appellant, claiming that the evidence firmly established that the parties had voluntarily lived separate and apart without cohabitation for the statutory period of eighteen months in conformity with the terms of the written separation agreement, which was made in good faith and was still in force, contends that she should have been granted an absolute divorce from the husband and awarded custody of the children. But, even if the evidence was such as to justify the granting of a divorce on the ground that that the parties had voluntarily separated, the husband nevertheless had a right to a divorce based on acts of adultery committed prior to the expiration of the eighteen months required for a voluntary separation. *Holofcener v. Holofcener,* 242 Md. 727, 219 A. 2d 839 (1966).

We think that the chancellor was clearly right in granting the appellee a divorce on the ground of adultery, but that he may have been wrong in awarding custody of the children to the father on the premise that the mother had committed adultery.

As to the divorce, the record indicates that the testimony of the husband, together with that of the detective, was sufficient to show an adulterous disposition and an opportunity to commit adultery, but even if the testimony of the detective was, as the appellant infers, insufficient to satisfy the corroborative requirements of Maryland Rule S75, the uninhibited testimony of the paramour—he not being a party to the divorce proceeding—was alone sufficient to corroborate the testimony of

the husband. *Blankenship v. Blankenship,* 239 Md. 498, 212 A. 2d 294 (1965). The decree will therefore be affirmed as to the divorce.

With regard to the award of custody, although the chancellor, basing his decision on the record in the divorce case and the holding in *Parker v. Parker,* 222 Md. 69, 158 A. 2d 607 (1960), found that the father, not the mother, was the fit and proper person to have custody of the children, we think that the determination of that fact, due to the ages of the children, should have been deferred until after a qualified agency had made an investigation for the chancellor as to what would be in the best interest of the children, after considering the adage and postulate that children, particularly young teenage girls, are more apt to need the care and supervision of the mother rather than the father. While the custody of children born during a marriage that has been dissolved as the result of adulterous conduct, is generally awarded to the innocent party (not as a matter of punishment but because it is assumed that the children will be reared in a clean and more wholesome moral atmosphere), the fact that the mother may have committed adultery is not an absolute and inflexible bar to her being awarded custody. *Cornwell v. Cornwell,* 244 Md. 674, 224 A. 2d 870 (1966). On the contrary, where a mother, who having committed adultery, has ceased the adulterous relationship, changed her way of living and demonstrated that she is a fit and proper person to raise the children in a clean and moral atmosphere, her past indiscretions may be overlooked in considering an award of custody because the primary consideration, even in cases involving an adulterous spouse, is the best interest and welfare of the children. *Cornwell v. Cornwell, supra.* Also see *Cupps v. Cupps,* 245 Md. 700, 227 A. 2d 225 (1967) ; *Jester v. Jester,* 246 Md. 162, 228 A. 2d 829 (1967) ; *Hoder v. Hoder,* 245 Md. 705, 227 A. 2d 750 (1967) ; *Miller v. Miller,* 245 Md. 711, 228 A. 2d 311 (1967) ; *Pratt v. Pratt,* 245 Md. 716, 228 A. 2d 611 (1967). The decree will therefore be reversed and remanded as to the custody of the children.

On remand, upon the receipt of a report as to the investi-

gation made by an appropriate agency and the taking of such further evidence as may be deemed expedient, the chancellor should be in a better position to determine what is in the best interest and welfare of the children.

> *Decree affirmed in part and reversed in part and remanded for further proceedings with respect to custody of the children; appellee to pay the costs.*