## HOLCOMB *v.* HOLCOMB

[No. 392, September Term, 1968.]

*Decided October 7, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*Melvin G. Wachs,* with whom were *Pressman & Matz* on the brief, for appellant.

*William W. Wenner,* with whom were *Rollins & Wenner* on the brief, for appellee.

PER CURIAM.

This is an appeal from a decision of Chief Judge Schnauffer of the Circuit Court for Frederick County denying the father's (appellant) petition for custody of his minor son, Jeffrey. The issue presented is whether the decision below denying custody to the father was in the best interests and general welfare of the child.

On June 10, 1965, the mother, Julia Lee Holcomb, ap-

pellee, obtained a divorce *a vinculo matrimonii* from the father, Thomas H. Holcomb. The divorce decree granted custody of the couple's three children, a daughter Lana, age 20; a son Rodney, age 17; and Jeffrey (the child whose custody is the object of these proceedings), age 11, to the mother and ordered the father to make child support payments of twenty dollars per child per week. At a subsequent hearing on June 22, 1967, the father was awarded custody of Rodney. This was attributable in part to the fact that Rodney had demonstrated delinquent tendencies. Rather than sending him to a training center, custody was awarded to the father, a retired Army major.

On September 19, 1967, the father filed a custody petition for the younger brother Jeffrey. The petition alleged that the mother had not exercised proper care for the child and that she was an unfit person to retain custody of the child. It was further contended that as a result of the mother's failures, the child was exhibiting delinquent tendencies as evidenced by minor violations of the law. The father's petition concludes that it is not in the child's best interests to continue him in the custody of the mother.

This Court, in hearing any custody appeal, must always keep two basic propositions before it. First, in making a custody determination, the legal standard to be applied is which party will further the best interests of the child. As was recently stated in *Shanbarker v. Dalton*, 251 Md. 252, 257, 247 A. 2d 278, 281 (1968), "It is a well established principle of law in Maryland that what is best for the child is the determining factor in custody cases." See also *Orndoff v. Orndoff*, 252 Md. 519, 250 A. 2d 627 (1969); *Breault v. Breault*, 250 Md. 173, 242 A. 2d 116 (1968); *Heaver v. Bradley*, 244 Md. 233, 223 A. 2d 568 (1966); and *Ross v. Pick*, 199 Md. 341, 86 A. 2d 463 (1952). The second proposition is that in examining the trial testimony, great weight is to be given to the chancellor's finding of fact and determination as to credibility of the witnesses. The reason for this was set forth

by Judge Collins in *Sibley v. Sibley,* 187 Md. 358, 362, 50 A. 2d 128, 130 (1946), and cited with approval in *Daubert v. Daubert,* 239 Md. 303, 211 A. 2d 323 (1965) :

> "We see none of the parties. The Chancellor had the parties and the witnesses before him. He was able to observe their demeanor and general appearance while on the stand, to judge of their character, probable attitude toward, and their probable influence over the infant. He also had the opportunity to talk to the infant. Unless there is some reason to the contrary, his findings ought not to be disturbed." *Id.* at 309.

See also *Orndoff v. Orndoff, supra,* and *Hild v. Hild,* 221 Md. 349, 157 A. 2d 442 (1960).

With these principles in mind we have examined the trial record. The father launched a two pronged attack in an attempt to show that the child's best interests could be better served by him. One line of attack was to demonstrate that the child was developing delinquent tendencies as had his older brother Rodney.

The trial judge found that while Rodney's behavior had improved since the shift in custody, it did not follow that Jeffrey was the same type child as Rodney or that his needs were the same. He found the two siblings as different "as day is from night." Whereas Rodney needed the discipline that his father could provide, Jeffrey needed the love that his mother and sister were able to give him.

Other factors, which while not conclusive of the issue but which lend support to the trial judge's decision, are the recommendation of the Juvenile Court Probation Officer (the only neutral witness) that the custody not be changed, and Jeffrey's own testimony in the judge's chamber that he preferred to stay with his mother.

The other prong of the appellant's attack is aimed at the mother's character. The father endeavored to show that the mother had become involved with a married man. The chancellor chose not to believe this, or at least was

of the opinion that there was no showing that such conduct had adversely affected Jeffrey. In *Shanbarker v. Dalton, supra,* we held that even a showing of adultery is not conclusive proof on the issue of which parent will beter serve the best interests of the child.

There was evidence that the mother was hard working, provided a good home for her children, saw to it that Jeffrey attended church regularly, and encouraged him in his studies.

We certainly are afforded no basis on which we can say that the decision of the chancellor should be disturbed.

*Order affirmed, appellant to pay costs.*